MICHAEL BRADY

*v.*

CARTERET REALTY COMPANY.

[Submitted December 9th, 1904.   Decided January 10th, 1905.]

Under the act for quieting titles to land, requiring an issue at law to be directed on application of either party, and declaring that the court of chancery shall be bound by the result of such issue, but that it may, for

sufficient reasons, order a new trial thereof, application for a new trial of such an issue should be acted on according to the practice in respect to new trials of actions at law upon contested titles.

On motion for a new trial of issue at law.

*Mr. Willard P. Voorhees* and *Mr. Ephraim Cutter,* for the motion.

*Mr. Gilbert Collins, contra.*

MAGIE, CHANCELLOR.

Whether a motion for a new trial of an issue directed by the court in a cause in which relief is sought under the provisions of the Quiet Title act, is to be dealt with as are motions for new trials of issues directed by the court in causes arising under the general jurisdiction of the court of equity, is a question raised by counsel moving for a new trial.

Issues directed under the general jurisdiction of the court of chancery are said to be for the information of the conscience of the court. The verdict may be disregarded and a decree made in opposition to the verdict taken thereon. But by the act under consideration, upon the application of any party, an issue is required to be directed. If such application is made the chancellor can make no decree except upon the finding returned upon such issue. The act further declares that the court shall be bound by the result of such issue, but that it may, for sufficient reason, order a new trial thereof. The issue thus required to be made obviously takes the place of a trial at law upon a contested title. It may be doubted whether the act, if it had failed to afford any party concerned a right to a trial at law, and to accord to the result of that trial a binding force, would have possessed constitutional validity.

It results, in my opinion, that in dealing with applications for new trials of such issues, this court should act in accord with the practice in respect to new trials of actions at law upon contested titles. Such has been the apparent trend of all our cases, from the leading case of *Powell* v. *Mayo, 26 N. J. Eq.*

(*11 C. E. Gr.*) *120; S. C., 27 N. J. Eq.* (*12 C. E. Gr.*) *440.* See *Holmes* v. *Chester, 26 N. J. Eq.* (*11 C. E. Gr.*) *79; Jersey City* v. *Lembeck, 31 N. J. Eq.* (*4 Stew.*) *255.*

The issue directed was in respect to the right of possession to some thirteen acres of land in Middlesex county. The realty company was the plaintiff and Brady was the defendant in the issue. At the trial the company proved a paper title to the *locus in quo* and rested. Brady then produced evidence tending to show that he had acquired title to the *locus in quo* by adverse possession. This was the real issue tried. By Brady's evidence it was made to appear that he had been in possession of two tracts, viz., one of about fifty-eight acres and the other of about thirteen acres (which was that in dispute), under lease from two persons named Parsons, who were predecessors of the company in the chain of title. This lease expired in April, 1880.

Brady himself testified that prior to the expiration of the lease he had, at an interview with the two Parsons, then the owners, agreed with them, in behalf of his son, Charles Brady, for a lease to the son, of both tracts, for the year, from April, 1880, to April, 1881. Charles' right, if any, depended upon this parol agreement thus testified to.

Brady also testified that he remained in possession of both tracts during the year, from April, 1880, to April 1st, 1881, as before that time. It was apparently deemed important to establish that during that year the son, Charles, was the tenant, and that Brady's possession was under Charles, and not under the Parsons, whose tenant he had previously been.

For this purpose Brady offered in evidence a letter, dated in February, 1881, addressed to Charles Brady and signed by the two Parsons, who were then the owners of the tract in dispute. It contained these words: "We have sold the farm which you rent to Mr. G. W. Brown, and you will please pay the rent to him from the 1st of December, 1880." This offer was overruled and exception duly taken.

Whether Brady's possession, up to April, 1881, was a holding over from the expiration of his previous lease or was a possession under Charles, who was the Parsons' tenant, was immaterial. If Charles was tenant and Brady his agent or subtenant (which

it was did not appear), Brady's possession could not have been adverse to the Parsons until after the tenancy of Charles, to which Brady had testified, had expired. Whether Charles was tenant during that year or not was therefore of no consequence with respect to the question at issue. The adverse possession which was claimed must have assumed that character after April, 1881.

The letter was subsequently admitted in evidence. But as its admission was for the sole purpose of contradicting the Parsons, who had both testified that they had not rented to Charles, this would probably not have cured its previous rejection if erroneous. But, for the reason given, I think the rejection was proper.

It is further contended that the trial judge erred in his charge restricting the jury, in the consideration of Brady's claim to a possession adverse to the owners of the title, to the erection of a building or buildings on the land and the payment of the yearly taxes. Taken in connection with the precedent matter of the charge, this was in no sense erroneous. The judge had just stated that the proofs were plenary that Brady had been for at least twenty years in actual, exclusive, visible, notorious possession. He had declared that the sole question for them to settle was whether the proved possession was adverse or hostile to the owners. He had added that Brady's possession, if a mere holding over as a tenant, would not be indicative of hostility, without some proof of claim to ownership. In that connection it was proper to direct attention to the evidence which might tend to evince that claim of hostile ownership which was necessary to sustain the issue on Brady's part.

I find no substance in the objections to the rulings of the trial judge on the admission or rejection of evidence, nor do I think the verdict was against the weight of evidence.

It results that the application for a new trial must be denied, and a decree must be made for the company, pursuant to the statute.